691 So.2d 1216 (1997)
Deborah FLEMING
v.
HCA HEALTH SERVICES OF LOUISIANA, INC., d/b/a Cypress Hospital.
Suandra FLEMING and Sharon Fleming
v.
HCA HEALTH SERVICES OF LOUISIANA, INC., d/b/a Cypress Hospital
No. 96-C-1968.
Supreme Court of Louisiana.
April 8, 1997.
Rehearing Denied May 9, 1997.
*1217 Donald S. Zuber, Seale, Smith, Zuber & Barnette, Baton Rouge, for applicant.
Michael Benny Miller, Miller & Miller, Crowley, for respondent.
Robert L. Roland, Chris James LeBlanc, Baton Rouge, for amicus curiae Louisiana Hosp. Ass'n.
LEMMON, Justice.[*]
This is a wrongful death action. The plaintiffs in these consolidated cases are the children and the estranged wife of King Fleming, who apparently committed suicide several hours after he allegedly was refused emergency services at Cypress Hospital in Lafayette. A jury found that Cypress was not liable for damages on account of its failure "to examine or assess King Fleming," but the court of appeal reversed and rendered judgment for plaintiffs.

I
On February 15, 1989, Fleming, a resident of Lake Charles, went to the emergency room at a hospital there, but left without being seen by a physician. Later that day, Fleming telephoned his friend, Ellis Guilbeau of Lafayette, and asked Guilbeau to pick him up in Lake Charles and to drive him to Cypress Hospital in Lafayette. Guilbeau agreed and had his wife call Fleming's wife, who was working and living in Lafayette. Mrs. Fleming in turn contacted Cypress.
According to the nurse at Cypress, Mrs. Fleming requested a referral to a facility that would admit and treat her husband who had no insurance, money or job. The nurse denied that Mrs. Fleming asked her for Cypress to assess Fleming or provide emergency treatment.
On the other hand, Mrs. Fleming testified that she contacted the nurse at Cypress by telephone, stressing that Fleming was suicidal and needed an immediate assessment and diagnosis when he arrived from Lake Charles. The nurse refused the request for treatment and referred Mrs. Fleming to a mental health center, but the center informed Mrs. Fleming that there was no vacancy. According to Mrs. Fleming, she then went to Cypress, where the nurse directed her to a public hospital. Mrs. Fleming met her husband and Guilbeau in the Cypress parking lot, where she informed Fleming that Cypress would not accept him and ultimately convinced him to go to the public hospital. Fleming, accompanied by his wife and Guilbeau, went to the public hospital, but *1218 after waiting for about an hour to be seen became agitated and left.
Guilbeau and Mrs. Fleming searched for her husband without success. Around 1:00 a.m. the next morning, Fleming apparently jumped from an overpass onto an interstate highway and was killed by a truck. These separate suits were filed against HCA Health Services, Inc., d/b/a Cypress Hospital, and were consolidated for trial.
Following a two-day trial, the jury answered in the negative the initial special interrogative asking whether "Cypress Hospital [was] at fault in failing to examine or assess King Fleming." The jury thus never reached the interrogatories regarding causation and damages. The trial court rendered judgment in accordance with the jury's verdict, dismissing the action against Cypress.
The court of appeal reversed, concluding that Cypress breached its statutory duty under La.R.S. 40:2113.6 "to render King Fleming, a person in need of emergency services, access to diagnosis by a licensed physician."[1] 95-1275, 95-1276, p. 3 (La.App. 3 Cir. 7/3/96), 676 So.2d 839, 843. (emphasis added). The court first determined that the trial court's jury interrogatory was defective and that there was a misleading jury instruction. Observing that the trial judge phrased the jury interrogatory in terms of Cypress'"fault," the court stated that the judge should have used a more appropriate phrasing such as: "Do you find that Cypress Hospital breached its duty under the statute, which reads ... ?" As to the jury instructions, the intermediate court concluded that the trial judge, after reading the language of Section 2113.6 providing for a "specific and compulsory duty," erred in giving the following general instruction implying discretion:
Louisiana law further provides that a hospital is not an insurer of a person's safety, and the rules as to the care required are limited by the rules that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate is likely to happen. The hospital is obligated to use reasonableness in light of the requirement of a person's circumstance. (emphasis in original).
The intermediate court reasoned that by providing the jury with two incongruous standards, one mandatory and one discretionary, the trial judge mislead the jury into believing the Cypress had discretion. The court further reasoned that "the defective verdict interrogatory, reinforced by the defective jury instruction, which explicitly grafted the requirement of a finding of fault in order to determine that the statute had been violated, conveyed that a violation of the statute required the added finding that the violation occurred through the fault of the violator." 95-1275, 95-1276 at p. 5; 676 So.2d at 844. Thus the court declined to accord any deference to the decision of the finder-of-fact and reviewed the record de novo.[2]
On the merits, the court concluded that Cypress violated its statutory duty under Section 2113.6, which mandates that a hospital provide "a person in need of emergency services access to diagnosis," regardless of the person's ability to pay. In so holding, the court stated that "Cypress knew, or should have known, that it was being presented with an emergency situation, and it knew or should have known that it was being requested to provide services, as required under the statute." 95-1275, 95-1276 at p. 8; 676 So.2d at 845. The court then concluded that Cypress' statutory breach caused King *1219 Fleming to lose a chance of survival and awarded damages accordingly.
The dissenting judge in the court of appeal noted that the majority overlooked the policy underlying La.Rev.Stat. 40:2113.6, which is "to allow patients to seek quick medical care in emergency situations until their condition could be stabilized," and that the statute was not enacted to allow persons a choice of any hospital they desire. 676 So.2d at 849. As to the facts of this case, the dissenting judge noted that "King decided that he wanted private care, not that he needed emergency care." Id.
We granted Cypress' writ application to address the correctness of that decision. 96-1968 (La.11/8/96), 683 So.2d 253.

II
We need not address the jury instruction and jury interrogatory issues, because plaintiffs have not met their threshold burden, under any view of the disputed portions of the evidence, of establishing that Fleming was in need for "emergency medical services."[3] In the absence of preponderating proof that emergency medical services were needed, the statute is simply inapplicable.
The phrase "emergency medical services" is defined in La.Rev.Stat. 40:2113.6C as follows:

[S]ervices that are usually and customarily available at the respective hospital and that must be provided immediately to stabilize a medical condition which, if not stabilized, could reasonably be expected to result in the loss of the person's life, serious permanent disfigurement or loss or impairment of the function of a bodily member or organ, or which is necessary to provide for the care of a woman in active labor if the hospital is so equipped and, if the hospital is not so equipped, to provide necessary treatment to allow the woman to travel to a more appropriate facility without undue risk of serious harm. (emphasis added).
In concluding that plaintiffs met their threshold burden,[4] the court of appeal stated that "[r]eferences to [Fleming's] bizarre behavior are abundant" and that the nurse at Cypress admitted that Mrs. Fleming "informed her that she thought King was a potential suicide victim." The court further described Fleming as "distraught" and as being "in an emotional breakdown, exhibiting irrational behaviorunable to think rationally." The court thus concluded that the Cypress nurse's awareness of Fleming's being "potentially suicidal" and "exhibiting irrational behavior" was sufficient to demonstrate the need for emergency medical services and thus to trigger the statutory duty to provide access to assessment.
The evidence, whether viewed on a de novo review of the record or under the manifest error standard, does not support the court of appeal's conclusion regarding Fleming's need for emergency medical services at the time his wife allegedly requested such services. Indeed, the record establishes quite the contrary. No one who came into contact with Fleming in the hours immediately before he arrived in the parking lot of Cypress believed he was suicidal. The person who spent the most time with him, Ellis Guilbeau, did not believe he was suicidal. To the contrary, Guilbeau stopped his vehicle on their way from Lake Charles to Lafayette and allowed Fleming to walk on the shoulder of the interstate highway. Moreover, if Guilbeau had believed Fleming was in need of "immediate" treatment, he surely would not have driven Fleming seventy miles from Lake Charles to Lafayette, but would have taken him to a Lake Charles hospital.
The only testifying witness who professed that Fleming was suicidal at the time of Cypress' alleged refusal of emergency medical services was his estranged wife, who had not seen him or even spoken directly with *1220 him that day, but had spoken only with Guilbeau's wife. While Mrs. Fleming contended that Guilbeau's wife conveyed to her that Fleming was suicidal, Mrs. Guilbeau did not testify, and Mrs. Fleming's testimony in that respect was both hearsay and purely speculative, unsupported, conclusory and self-serving.
A similar issue arose under the federal counterpart statute in Eberhardt v. City of Los Angeles, 62 F.3d 1253 (9th Cir.1995). There, the federal court rejected the argument that an unapparent suicidal tendency constituted an emergency medical condition under EMTALA.[5] In so holding, the court reasoned that while in hindsight the medical record may have suggested the patient had a "self-destruction disposition," the patient at the time of screening did not manifest any suicidal tendency by acute or severe symptoms, and did not present any condition requiring immediate medical attention. Moreover, the court suggested that the suicidal condition may have manifested itself well after the person was discharged and thus was not one for which "immediate" treatment was required.
The fact that a person or the person's spouse seeks assessment of a psychological problem does not, of itself, establish that immediate treatment is required or that the person is "in need of emergency medical services." Here, plaintiffs presented no evidence, other than Mrs. Fleming's self-serving attestations that Fleming was suicidal, that Fleming was in serious distress or experiencing a medical crisis at the time the nurse allegedly denied him emergency services. Nor was there any evidence that Fleming had made or considered any suicide attempts. Moreover, significant circumstantial evidence refuted Mrs. Fleming's statementsGuilbeau's belief that Fleming was not suicidal; Guilbeau's driving Fleming seventy miles to Lafayette, part of the way with Fleming in the bed of the pickup truck, to take Fleming to the hospital Fleming chose; the fact that Guilbeau allowed Fleming to walk on the side of the interstate highway during the trip; the fact that Mrs. Fleming's knowledge of her husband's condition that day was based solely on her conversation with Guilbeau's wife, who had not seen or talked to Fleming; and the fact King Fleming had not actually attempted or verbally threatened suicide.
While Fleming's tragic demise establishes by hindsight that his condition at some point may have necessitated emergency medical services, the record does not establish that his condition had reached that point when the Cypress nurse referred him to another facility. Given plaintiffs' failure to produce sufficient evidence on this point, we conclude that the threshold statutory requirement of need for emergency medical services was not satisfied.
For these reasons, we reverse the judgment of the court of appeal, and we reinstate the judgment of the trial court in favor of Cypress dismissing plaintiffs' claims.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice, dissenting.
I disagree with the majority opinion that plaintiffs have not met their threshold burden regarding the necessity of emergency care. The testimony in this case shows that the decedent, King Fleming, was agitated, paranoid and exhibited irrational behavior. It was obvious to everyone including the nurse on duty at Cypress Hospital that some medical attention was needed. The record shows that Cypress Hospital advertised free assessments. In light of this, a duty was imposed upon the facility to render an assessment *1221 to the decedent. They did not. Although the Court of Appeal found the Emergency Medical Treatment and Active Labor Act, (EMTALA), inapplicable to this case, I disagree.
42 U.S.C. § 1395dd provides in part:
" (a) Medical screening requirement
In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.
Nurse Braman, Cypress Hospital, testified as follows regarding her conversation with the decedent's wife, Deborah Fleming: " A. When I asked what his problem was, she talked about the drinking and that irrational behavior and that they thought he might be suicidal.
Q. Did you inquire any further at that point when she told you that?
A. No. I didn't because I was trying to refer her to a source where she could get some assistance.
Q. You were not one of those sources presumably? You were not a source that could help him?
A. I was a source but it's generally the policy to try to refer them to where they can get assistance somewhere."
It is clear from the record that the decedent was in a state whereby he could do harm to himself. In fact, he took his glasses off, then jumped onto the interstate where he was hit by an eighteen wheeler. The decedent should have been evaluated by a doctor pursuant to EMTALA. Cypress Hospital was negligent under EMTALA when they referred the decedent to another hospital rather than render an appropriate medical screening examination. The Court of Appeal ruled that the state statute should apply. I would argue that the broader federal statute would supersede the state statute in this instance. I respectfully disagree with the holding of the majority in this case.
NOTES
[*] Knoll, J., recused; not on panel. Rule IV, § 3.
[1] La.Rev.Stat. 40:2113.6 provides in part:

B. No officer, employee or member of the medical staff of a hospital licensed by the Department of Health and Human Resources shall deny a person in need of emergency medical services access to diagnosis by a licensed physician on the staff of the hospital because the person is unable to establish his ability to pay for the services or because of race, religion, or national ancestry. In addition, the person needing the services shall not be subjected by any such person to arbitrary, capricious, or unreasonable discrimination based on age, sex, physical condition, or economic status. (emphasis added).
[2] The court of appeal also reviewed the judgment under the manifest error standard and concluded that the Cypress nurse's testimony denying Mrs. Fleming's request for an emergency assessment was unbelievable because it was internally inconsistent and contradictory.
[3] We also need not address the issues of whether a violation of La.Rev.Stat. 40:2113.6, which contains its own penalty provisions for a fine and suspension from the state medical assistance program, constitutes actionable fault in a tort action.
[4] Actually, the court of appeal wrote that the need for emergency services was "not really contested by Cypress." 95-1275, 95-1276 at p. 8, 676 So.2d at 845 (emphasis in original). Contrary to that statement, Cypress strenuously contested the need for emergency medical services.
[5] The statutory definition of "emergency medical services" at issue is similar to that set forth in the federal counterpart statute, EMTALA, which defines "emergency medical condition" as:

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in
(i) placing the health of the individual ... in serious jeopardy;
(ii) serious impairment of bodily functions; or
(iii) serious dysfunction of any bodily organ or part.
42 U.S.C. § 1395dd(e)(1)(a).