711 So.2d 699 (1998)
Rickey G. SPRADLIN, et al., PlaintiffsAppellees,
v.
ACADIA-ST. LANDRY MEDICAL FOUNDATION, Defendant-Appellant.
No. 97-845.
Court of Appeal of Louisiana, Third Circuit.
January 21, 1998.
Order Clarifying Decision on Limited Grant of Rehearing June 24, 1998.
T. Robert Shelton, Lafayette, for Rickey G. Spradlin, et al.
Chris J. LeBlanc, Baton Rouge, for Acadia-St. Landry Medical Foundation.
Before DOUCET, C.J., and SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
Might a cause of action alleging the failure of a hospital's emergency room to treat and stabilize a patient on account of that person's lack of means bypass the procedural and substantive limitations imposed by the Louisiana Medical Malpractice Act?
The trial court answered this question in favor of plaintiffs, whose petition claims damages pursuant to the federal Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, and its Louisiana statutory equivalent, La.R.S. 40:2113.4.
For the following reasons, we agree with the conclusion reached by the trial court. While Louisiana's Medical Malpractice Act governs suits involving malpractice as defined by the Act, they do not control suits for damages not contemplated by the Medical Malpractice Act, including the indigent dumping alleged by plaintiffs in this case.

*700 FACTS AND PROCEDURAL HISTORY

Essentially, plaintiffs maintain that decedent, Mary Spradlin, complaining of vomiting, pain in the upper right quadrant of her back and other flu-like symptoms, presented to the emergency department of Acadia-St. Landry Hospital on August 24, 1995, where she was examined by an emergency room physician, Dr. T. Girard.
Ms. Spradlin's transfer to University Medical Center, after Dr. Girard diagnosed her condition as right upper lobe pneumonia, is what gives rise to the present action. According to plaintiffs, Ms. Spradlin was transferred prematurely, owing to her inablity to pay her medical expenses or to provide proof of insurance, and her death on August 25, 1995, at University Medical Center was caused by the hospital's and physician's premature diversion of Ms. Spradlin to the charity hospital in Lafayette.
In response to her survivors' suit, defendant-appellant Acadia-St. Landry Medical Foundation filed alternatively a dilatory exception of prematurity and a peremptory exception of no right of action. The survivors of decedent Mary D. Spradlin replied that a suit claiming damages pursuant to 42 U.S.C. § 1395 (EMTALA) need not be initiated before a medical review panel.
The trial court agreed with plaintiffs, prompting the hospital to "appeal"[1] the decision to us.

LAW
Scarce indeed is the situation in which a bonafide medical malpractice action falls beyond the reach of the Medical Malpractice Act. La.R.S. 40:1299.47, part of the Medical Malpractice Act, La.R.S. 40:2113 et seq., makes this clear.
§ 1299.47. Medical review panel
A. (1) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
....
B. (1)(a)(I) No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.
....
(Emphasis ours.)
In this case, however, plaintiffs allege dumping on the part of the hospital. They maintain that defendant:
"b. Failed to have adequate policies and procedures regarding medical screening, medical treatment and proper transfer policies as to protect the safety of the decedent as to not transfer a critically ill patient; all violative of 42 U.S.C. 1395(dd) [and] LSA R.S. 40:2113 et seq."[2]
The question raised by this appeal is whether the two just-cited provisions derogate from the seemingly universal language contained in La. R.S. 40:1299.47. First, we examine the Federal provision.
Subsections (a) and (b) of EMTALA require hospitals with emergency departments upon request to provide presenting patients an appropriate medical examination, ancillary routine emergency services and necessary stabilizing treatment. In addition to civil penalties, subsection (d)(2) provides for civil enforcement by injured patients, authorizing an award of "those damages available for personal injury under the law of the State in which the hospital is located" and equitable relief. 42 U.S.C. sec. 1395(dd) subsection (d)(2)(C) limits recovery to actions brought no more than two years after the date of *701 the violation. Subsection (f) provides that this law does not preempt any State or local law requirement except to the extent that the requirement directly conflicts with a requirement of that section.

Boudreaux v. State, 97-0076 at pp. 1-2 (La. App. 4 Cir. 1/15/97)(Emphasis ours); 687 So.2d 596, 597, writ denied, 97-0396 (La.4/18/97); 692 So.2d 447.
Thus we ask whether our state's laws run afoul of EMTALA. At this juncture, it is imperative that we consider not only La.R.S. 40:1299.47, but the definition of the sorts of malpractice claims encompassed by our medical malpractice act for, as the Louisiana Supreme Court has observed:
The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.
Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992)(holding Act inapplicable for the collapse of a hospital bed which was wholly unrelated to staff negligence).
In Sewell, the issue was whether litigation against health care providers arising from defects in hospital furniture fell within the scope of the Medical Malpractice Act. Partly due to applicable statutory language and partly on policy grounds, that is, because the alleged damages were not "`treatment-related' or caused by a dereliction of professional skill," Sewell, 600 So.2d at 579, n. 3, the supreme court concluded that Louisiana law did not "require initial submission of the claim to a medical review panel [or] limit recovery to $500,000.00 in future medical expenses." Id., 600 So.2d at 577. We likewise conclude that the Medical Malpractice Act is inapplicable to suits for damages arising not from treatment-related malpractice but from the alleged abandonment on economic grounds of indigent patients in need of emergency assistance. As the court in Sewell observed, the definition of "malpractice" contained in La.R.S. 40:1299.41 of the Medical Malpractice Act is premised upon some connection to a malpractice claim:
§ 1299.41. Definitions and general applications
A. As used in this Part:
....
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
(Emphasis ours.)
Here, plaintiffs' claim to damages is not rooted in medicine, but in economics. Accordingly, the acts of liability alleged of defendant do not fall within the legal definition of malpractice as envision by the Act. Thus, ordinary tort law must be applied to this controversy. Sewell.
Ordinary tort law in the instant appeal compels us to affirm the judgment of the trial court.
In Moses v. Mosley, La.App. 3 Cir., 146 So.2d 263, 267, we summarized established jurisprudence to the following effect: `(W)here a statute is enacted to protect the class of persons in which the plaintiff is included against the type of loss or injury which in fact has been sustained, an unexcused violation of such a statute is `negligence per se,' and this negligence is actionable if it is a legal or proximate cause of the accident. * * * (Citations omitted).' The violation is a proximate cause of the plaintiff's injury if the risk or harm encountered by him fall within the scope of the statute's protection, and if such violation is a cause-in-fact of such injury. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298. *702 Lee v. Carwile, 168 So.2d 469, 471 (La.App. 3 Cir.1964).[3] In accord, Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970).
In this case, there can be no question but that both EMTALA and La.R.S. 40:2113.4 are directed to the protection of but one class: those seeking emergency medical treatment who are turned away due to their lack of insurance or demonstrable means. The statutes provide a perfect fit in such cases. As to the provision of the United States Code cited by plaintiffs, "the federal jurisprudence clearly establishes that EMTALA was enacted in response to the concern that hospitals were dumping medically indigent patients either by refusing to provide emergency medical treatment or by transferring indigent patients without having stabilized their emergency conditions." Boudreaux v. State, 687 So.2d 596, 597. Similarly, La. R.S. 40:2113.4 imposes upon hospitals in Louisiana the obligation to render emergency services to all persons regardless of insurance or economic status. Gordon v. Willis Knighton Medical Center, 27,044 (La. App. 2 Cir. 6/21/95); 661 So.2d 991, writs denied, 95-2776, 95-2783 (La.1/26/96), 666 So.2d 679. Part A of the statute requires that every hospital in Louisiana:
shall make its emergency services available to all persons residing in the territorial area of the hospital regardless of whether the person is covered by private, federal Medicare or Medicaid, or other insurance.... However, in no event shall emergency treatment be denied to anyone on account of inability to pay....
Moreover, there is no question but that plaintiffs claim a causal link between the hospital's alleged breach of the obligation imposed by EMTALA and La. R.S. 40:2113.4.
Consequently, to the extent that plaintiffs have alleged losses arising not from the sort of negligent medical malpractice to which our medical malpractice statute is targeted, but from the dumping on economic grounds of an indigent patient in need of emergency medical services,[4] the judgment of the trial court is affirmed, with costs of this appeal to be assessed to defendant.[5] While the Louisiana Medical Malpractice Act offers protections to medical providers whose liability arise from acts of negligence pertaining to the treatment *703 of patients, EMTALA and La.R.S. 40:2113.4, exceptions to La. R.S. 40:1299.41, specifically govern instances in which damages result from the deprivation of emergency services by those ordinarily covered providers on the basis of an individual's lack of means.

DECREE
The judgment of the trial court is affirmed, with defendant to bear the cost of this appeal. Assessment of other costs to await final judgment on the merits.
AFFIRMED.

On Rehearing
We have granted the defendant's application for rehearing to clarify the issue of the applicability to the Louisiana Malpractice Act to plaintiff's claims. On appeal, we determined that the plaintiff's claims for damages pursuant to the Emergency Medial Treatment and Active Labor Act (EMTALA), 42 U.S.C. 1395dd and its Louisiana statutory equivalent, La.R.S. 40:2311, were not subject to the procedural and substantive limitations imposed by the Louisiana Medical Malpractice Act. Specifically, we found that those claims need not be presented to a Medical Review Panel prior to the filing of suit. However, we did not clearly determine whether plaintiff's suit raised issues of medical malpractice not falling under EMTALA or La.R.S. 40:2311, and, if so, whether those claims must first be presented to a medical review panel. After reviewing the petition, it appears that the plaintiff has alleged behavior on the part of the defendant which, if proven, would constitute malpractice and which occurred in the treatment of the decedent prior to the transfer and separately from the decision to transfer. Therefore, these claims appear to be unrelated to the EMTALA or "dumping" claim. Therefore, we conclude that the Louisiana Medical Malpractice Act applies to these claims and that these claims must be presented to a Medical Review Panel prior to suit. Accordingly, we conclude that an Exception of Prematurity should have been granted as to the separate malpractice claims only. Therefore, we reverse the judgment of the trial court as to the malpractice claims only and render judgment granting the exception of prematurity only as to those allegations of malpractice occurring separately from the EMTALA claims. In all other respects the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] In reality, defendant's "appeal" constitutes a request that we exercise the supervisory jurisdiction of this court. In the interest of avoiding the expensive and lengthy delays the parties would otherwise have to endure, we will treat this "appeal" as a writ application, exercise our supervisory jurisdiction, and consider the issues presented.
[2] By contrast, there is no question but that the physician is accused of "dumping Mary D. Spradlin to University Medical Center due to lack of financial ability to pay for her medical needs in violation to [sic] 42 U.S.C. 1395(dd) and La.R.S. 40:2113, et seq."
[3] Moreover, we observe that EMTALA explicitly permits individuals suffering "personal harm as a direct result of a participating hospital's violation" of EMTALA to obtain relief "for personal injury under the law of the state in which the hospital is located."
[4] Fleming v. HCA Health Services of Louisiana, Inc., 96-1968 (La.4/8/97); 691 So.2d 1216, is distinguished insofar as that case involved an individual not in need of immediate medical services as defined by the state statute:

The phrase "emergency medical services" is defined in La.Rev.Stat. 40:2113.6C as follows:
[S]ervices that are usually and customarily available at the respective hospital and that must be provided immediately to stabilize a medical condition which, if not stabilized, could reasonably be expected to result in the loss of the person's life, serious permanent disfigurement or loss or impairment of the function of a bodily member or organ, or which is necessary to provide for the care of a woman in active labor if the hospital is so equipped and, if the hospital is not so equipped, to provide necessary treatment to allow the woman to travel to a more appropriate facility without undue risk of serious harm. (emphasis added).
Fleming v. HCA Health Services of Louisiana, Inc., 691 So.2d at 1219.
[5] We hasten to observe, however, that should plaintiffs be unable to show anything more than a case of negligent medical malpractice, defendant will not be deprived of its ability to rely on the Act, as EMTALA has no bearing on such claims:

While it may be argued that EMTALA creates a federal malpractice action, the federal jurisprudence clearly establishes that EMTALA was enacted in response to the concern that hospitals were dumping medically indigent patients either by refusing to provide emergency medical treatment or by transferring indigent patients without having stabilized their emergency conditions. The Act was not designed to provide a federal remedy for misdiagnosis or general malpractice. Brooks v. Maryland General Hospital, 996 F.2d 708 (4th Cir.1993).
Boudreaux v. State, 97-0076 (La.App. 4 Cir 1/15/97); 687 So.2d 596, 597, writ denied, 97-0396 (La.4/18/97); 692 So.2d 447.
In Boudreaux, no evidence was offered to support the claim that a hospital's failure to diagnose and treat a heart attack constituted intentional "dumping" as contemplated by the federal provision rather than negligent malpractice. Accordingly, the trial court granted defendant's motion for summary judgment on this issue.