727 So.2d 597 (1998)
Carla BOLDEN and Juan Bolden
v.
Heber E. DUNAWAY, Jr.
No. 97 CA 1425.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
Writ Denied March 26, 1999.
Roy Maughan, Baton Rouge, Louisiana, for plaintiffs-appellees Carla Bolden and Juan Bolden.
Janie E. Languirand, Baton Rouge, Louisiana, for defendant-appellant Heber E. Dunaway, Jr.
BEFORE: CARTER, GONZALES, WHIPPLE and FITZSIMMONS, JJ., and CHIASSON,[1] J. Ad Hoc.
*598 REMY CHIASSON, Judge Ad Hoc.
The sole issue in this appeal is whether plaintiffs have stated a cause of action that is subject to the provisions of the Medical Malpractice Act, La.R.S. 40:1299.41 et seq. Because we conclude they have not, we reverse the judgment of the trial court denying defendant's exception of prematurity and grant the exception of prematurity as to plaintiffs' malpractice claims.

FACTS AND PROCEDURAL HISTORY
On January 13, 1997, plaintiffs, Carla and Juan Bolden, filed their original petition naming Dr. Heber E. Dunaway, Jr. as defendant and containing the following pertinent allegations:
2.
On December 18, 1995 defendant examined plaintiff, Carla Bolden and confirmed the need for surgery to remove a tumor; defendant informed plaintiff he would assist Dr. Holden-Parker in performing the needed surgery which was scheduled for January 17, 1996 at Womans' (sic) Hospital in Baton Rouge, Louisiana.
3.
On January 17, 1996, Dr. Dunaway's office called plaintiff and told her defendant's surgical fee had to be paid in advance or he would not assist in the surgery; after discussion of the amount of defendant's fee, the Bolden's (sic) agreed to pay the requested fee in advance and were told to pay the money at Dr. Dunaway's office in Woman's Hospital the day of surgery.
4.
On January 17, 1996, at about 1:00 p.m., Mrs. Bolden was admitted in Woman's Hospital. Earlier, Mr. Juan Bolden had gone to Dr. Dunaway's office to pay for the surgery in advance; Dr. Dunaway's agent told Mr. Bolden that Dr. Dunaway had to accept the money and that he was in the hospital and she would page him....
5.
Mr. Bolden continued to wait until about 1:30 when he told defendant's agent he was going to check on his wife to see how she was doing, who had been prepped for the surgery and was waiting with an I.V. in her arm....
6.
About 2:20 p.m. plaintiff, Carla Bolden, was notified her surgery had been canceled because financial arrangements had not been made with Dr. Dunaway. About 2:30 p.m. Dr. Holden Parker, who had scrubbed for surgery came in and informed plaintiff that she had just been notified defendant was on his way to New Orleans.
7.
As a result of defendant's callousness and his negligence consisting of his failure to appear and accept payment or to make proper arrangements to receive advance payment, plaintiffs surgery was canceled and became more complicated and risky because of tumor growth....
8.
Plaintiffs desire and are entitled to damages allowed by law including damages for mental and physical pain and suffering caused by defendant's negligence.
On February 7, 1997, defendant filed a dilatory exception pleading the objection of prematurity.
On March 3, 1997, plaintiffs filed an amending petition with the following pertinent allegations:
2.
On December 18, 1995 defendant examined plaintiff, Carla Bolden and confirmed the need for surgery to remove a tumor which was causing infertility and other serious problems related to the female reproductive system, including severe pain and discomfort; at that time Dr. Dunaway agreed to perform surgery with Dr. Holden-Parker to remove the tumor; the necessary surgery ... was scheduled for January 17, 1996 at Womans' (sic) Hospital in Baton Rouge, Louisiana.
* * * * * *

*599 7.
Under the circumstances in this case, defendant's conduct in walking out on his patient who had been prepped for surgery because he had not been paid his fee was extreme and outrageous conduct which caused severe emotional distress to the plaintiffs. The defendant knew or should have known his conduct in abandoning a patient and canceling her surgery after she had been prepped for surgery was certain or substantially certain to cause severe emotional distress to the patient Mrs. Bolden and to her husband. Defendant's outrageous and extreme conduct which cancelled Mrs. Bolden's surgery worsened her condition and the surgery to remove the tumor became more complicated and risky because of tumor growth. Defendant's outrageous and extreme conduct caused both Mr. and Mrs. Bolden severe emotional and physical distress and caused plaintiffs to sustain monetary damages. ...
8.
Because of defendant's extreme and outrageous conduct, plaintiffs desire and are entitled to all damages allowed by law including damages for intentional infliction of emotional distress.
9.
As an additional cause of action, Dr. Dunaway's non-medical related decision to leave the hospital and not operate on his patient prepped for surgery because his fee was not in his pocket, was a nonmedical related intentional act not based on rendering professional health care services as defined by LSA-R.S. 40:1299.41(8) and therefore not covered by the medical malpractice act.
10.
Because of Dr. Dunaway's callous act or callous conduct as set forth in paragraph 9, plaintiffs suffered damages as contemplated by La.C.C. art. 2315 for which they desire and are entitled to recover all damages allowed by law.
The exception of prematurity was heard on March 31, 1997. The judgment rendered April 29, 1997, provides "that the Exception of Prematurity ... be and it is hereby denied as to the claims of Carla Bolden and Juan Bolden that are not malpractice as defined by La.R.S. 40:1299.41(8)."[2]
Defendant has appealed, asserting the following assignments of error for our review:[3]
1. The court should not have considered allegations and claims of intentional tort and intentional infliction of emotional distress stated in the first amending and supplemental petition in deciding the exception of prematurity to plaintiffs' original petition.
2. The court erred when, having sustained appellant's exception of prematurity to the claims of negligence of Carla Bolden and Juan Bolden made in the original petition, the original petition was not dismissed without prejudice.
3. The court erred in allowing plaintiffs to proceed with the claims of intentional tort and intentional infliction of emotional distress, raised in the first amending petition, having sustained Appellant's exception of prematurity to the claims of negligence of Carla Bolden and Juan Bolden.
4. The Court erred when the exception of prematurity to the first amending petition was heard without notice depriving defendant/appellant of the right to present evidence on the allegations and claims of intentional tort and intentional infliction of emotional distress.

DISCUSSION
Under the Medical Malpractice Act, no action for malpractice against a qualified health care provider may be commenced in a *600 court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. La.R.S. 40:1299.47. The right to a medical review panel has been labeled a "principal advantage" for qualified health care providers in actions against them for malpractice. Hutchinson v. Patel, 93-2156, p. 3-4 (La.5/23/94), 637 So.2d 415, 419.
The Medical Malpractice Act applies solely to claims arising from medical malpractice, which is defined in La.R.S. 40:1299.41 A(8) as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely...."
La.R.S. 40:1299.41 A(7) and (9) further define "tort" and "health care" as follows:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
"Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
In general, any conduct by a health care provider complained of by a patient is properly within the scope of the Medical Malpractice Act if it can reasonably be said that it comes within the definitions therein, even though there are alternative theories of liability. See Rogers v. Synthes, Ltd., 626 So.2d 775, 777 (La.App. 2d Cir.1993) (suit against hospital came under the Act even though plaintiff characterized her suit as one in strict product liability and redhibition); compare Hidalgo v. Wilson Certified Express, Inc., 94-1322 (La.App. 1st Cir.5/14/96), 676 So.2d 114 (suit for injuries sustained by patient while she was being transported in ambulance did not come under the Act because it was a suit involving negligent driving, not negligent health care). In enacting the Medical Malpractice Act, the legislature recognized the traditional rule of law allowing recovery for medical malpractice based on a physician-patient relationship that exists as the result of an express or implied contract and where the physician breaches either the contract or his or her professional duty to the patient. Hutchinson, 93-2156 at pp. 6-7, 637 So.2d at 421.
The allegations in the instant case state a cause of action for malpractice as defined by statute. Plaintiffs allege that the defendant doctor failed to render the professional services of assisting with her surgery as he had agreed to do. The alleged failure, if proven, is a breach of contract based on a failure to render professional services which should have been rendered in a timely fashion. Despite the attempt by plaintiffs in their amending petition to avoid the provisions of the Medical Malpractice Act by restructuring their allegations, we find that the clear and unambiguous wording of La.R.S. 40:1299.41 A(8) encompasses all of the acts complained of in plaintiffs' petitions.
We are mindful of the recent decision in Spradlin v. Acadia St. Landry Medical Foundation, 97-845 (La.App.3rd Cir. 1/21/98), 711 So.2d 699, but find that this case is not applicable to the matter before this court. In Spradlin, the court was faced with the issue of whether to allow a cause of action alleging the failure of a hospital's emergency room to treat and stabilize a patient on account of that person's lack of means to bypass the procedural and substantive limitations imposed by the Medical Malpractice Act. The Spradlin court concluded that the Medical Malpractice Act was inapplicable to suits for damages arising not from treatment-related malpractice but from the alleged abandonment on economic grounds of indigent patients in need of emergency assistance. Spradlin v. Acadia St. Landry Medical *601 Foundation, 711 So.2d at 702-703. The court noted that the acts of liability did not fall within the legal definition of malpractice as envisioned by the Act; thus, ordinary tort law was to be applied to the controversy. The court went on to note that both the federal Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, and its Louisiana statutory equivalent, La.R.S. 40:2113.4, imposed a duty upon hospitals to render emergency services to all persons regardless of insurance or economic status. Spradlin v. Acadia St. Landry Medical Foundation, 711 So.2d at 702.
The cases cited by plaintiffs, in support of their contention that they have stated a cause of action for intentional tort that does not come within the purview of the Medical Malpractice Act, are inapposite in light of the factual situation encountered here. The cases cited by plaintiffs all involve physical acts against the person of the plaintiff, not the failure to perform an agreement to provide medical care such as we have in the instant case. Leger v. Delahoussaye, 464 So.2d 1 (La.App. 3d Cir.1984), involved an allegation that the doctor intentionally struck the plaintiff in the head; Baham v. Medical Center of Louisiana at New Orleans, 95-2605 (La.App.4th Cir. 5/8/96); 674 So.2d 458, involved allegations regarding the performance of unauthorized surgery; Head v. Erath General Hospital, Inc., 458 So.2d 579 (La.App. 3d Cir.1984), writ denied, 462 So.2d 650 (La.1985), involved an alleged slip and fall; Reaux v. Our Lady of Lourdes Hospital, 492 So.2d 233 (La.App. 3d Cir.), writ denied, 496 So.2d 333 (La.1986), involved an alleged rape in a hospital.
To allow the plaintiffs in the instant case to avoid the provisions of the Medical Malpractice Act would lead to absurd results. Patients who pay their way, by alleging economic motives on the part of health care providers, could avoid the requirements of the Medical Malpractice Act, including limited liability of the health care provider; however, if the health care was provided free of charge, doctors would retain the benefits of the Act. Clearly, the legislature did not intend for applicability of the Medical Malpractice Act to depend on the motives of the doctors, be it greed or philanthropy, at the time of the alleged wrongful acts.
A final contention of plaintiffs is that because Mr. Bolden is a non-patient, his claim is not subject to the medical review panel requirement. However, the mere fact that Mr. Bolden is a non-patient is not the decisive factor in determining whether the claim comes under the Medical Malpractice Act. All claims against health care providers for malpractice must first go through the Medical Malpractice Act procedure, regardless of whether the claimant is a patient or a non-patient. Thomas v. LeJeune, Inc., 501 So.2d 1075, 1077 (La.App. 2d Cir.1987), overruled in part by Hutchinson v. Patel, 93-2156 at pp. 13-15; 637 So.2d at 425-6. In Thomas, a defendant tortfeasor (non-patient) filed a third-party demand in district court against health care providers; the suit sought indemnification or contribution for damages allegedly caused by the health care providers' negligent treatment of the plaintiff tort victim (patient). The third-party defendants filed an exception of prematurity, which the court granted. Thomas v. LeJeune, Inc., 501 So.2d at 1076. The holding is consistent with the definition of malpractice in LSA-R.S. 40:1299.41 A(8) as "any unintentional tort ... based on health care or professional services rendered ... to a patient...." (Emphasis added.)
The case of Hutchinson v. Patel, 637 So.2d 415, relied on by plaintiffs is distinguishable on the facts. In that case, the plaintiff (non-patient) was the estranged wife of the defendant psychiatrist's patient. When she received personal injuries at the hands of her estranged husband, she sued his psychiatrist for failing to warn her of his dangerous propensities. Hutchinson v. Patel, 637 So.2d at 418. The psychiatrist filed an exception of prematurity, which was denied. The court noted the fact that the non-patient plaintiffs claim was not based on any negligent act of the psychiatrist in the treatment of his patient but was, instead, a cause of action for a breach of duty allegedly owed by the psychiatrist directly to the plaintiff. Hutchinson v. Patel, 637 So.2d at 424.
In the instant case, the alleged wrongdoing of the defendant doctor was the failure to *602 assist with the surgery to be performed on Mrs. Bolden in a timely fashion, as he had agreed to do. Thus, the damages claimed by Mr. Bolden are based on the failure of the health care provider to render health care to a patient. Considering the facts of the instant case, Mr. Bolden's claim is clearly derivative of Mrs. Bolden's claim. Thus, Mr. Bolden's claim is one for "malpractice" as defined in the Act even though he is a non-patient.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, denying defendant's exception of prematurity as to plaintiffs' malpractice claims is reversed, and the exception of prematurity is hereby granted as to those claims. Costs of this appeal are assessed to plaintiffs.
REVERSED.
CARTER, J., concurs with reasons.
WHIPPLE, J., concurs for reasons assigned by CARTER, J.
FITZSIMMONS, J., dissents and assigns reasons.
CARTER, J., Concurring.
I reluctantly agree that the result reached by the majority is required under existing statutory law and jurisprudence. However, the conduct of this defendant is so shocking and extreme that there should be a legal remedy for this degree of callousness under the law outside of the Medical Malpractice Act. This is an area of the law that cries out for attention from our legislative branch of government.
FITZSIMMONS, Judge, dissenting with reasons.
I respectfully dissent from the decision. Any ambiguities in the Medical Malpractice Act should be strictly construed against coverage because the Act limits the general rights of tort victims. Hutchison v. Patel, 93-2156 (La.5/23/94); 637 So.2d 415, 420.
In the instant factual circumstance, Mrs. Bolden's claim is not premised on any breach of agreement for "medical care" or a "medical" decision by the physician not to operate. The issue before us involves an accounting problem. See Price v. City of Bossier City, 96-2408, p. 6 (La.5/20/97); 693 So.2d 1169, 1172. Accordingly, it falls outside of the parameters of the Medical Malpractice Act.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] In its brief oral reasons for judgment, the trial court stated as follows:

I am going to grant the exception of prematurity to dismiss the husband and wife's negligence and breach of contract claims. I am going to allow the plaintiffs' intentional tort claims to be maintained and allow them to proceed on the intentional infliction of emotional distress.
[3] Although this opinion does not address each assignment of error individually, it disposes of all issues.